UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARTA ALICIA ORTIZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | No. CV 14-7387-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on September 24, 2014, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on October 23, 2014, and March 30, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 22, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on October 26, 1960. [Administrative Record ("AR") at 134.] She has past relevant work experience as a caregiver, emergency medical technician, and medical assistant. [AR at 19, 53.]

On August 22, 2012, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since July 2, 2012. [AR at 12, 134.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").[1] [AR at 12, 99-100.] A hearing was held on May 13, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 31-57.] A vocational expert ("VE") also testified. [AR at 53-56.] On June 3, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from July 2, 2012, the alleged onset date, through June 3, 2014, the date of the decision. [AR at 12-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 7.] When the Appeals Council denied plaintiff's request for review on August 19, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it

---

[1] On November 13, 2013, after plaintiff's August 22, 2012, application was denied initially, plaintiff filed a second application for a period of disability and DIB, which was merged with and decided with plaintiff's August 22, 2012, application. [AR at 12, 34.]

2

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 2, 2012, the alleged onset date.[2]  [AR at 14.]  At step two, the ALJ concluded that plaintiff has the severe impairments of alcohol dependence, in reported remission; depression; and anxiety. [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.  [Id.]  The

---

[2]  The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016.  [AR at 14.]

4

ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels, with the following nonexertional limitations: "limited to simple repetitive tasks in a nonpublic setting, i.e., requiring only incidental contact with the public." [AR at 15.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a caregiver, emergency medical technician, or medical assistant. [AR at 19, 53-54.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "janitor" (Dictionary of Occupational Titles ("DOT") No. 381.687-018), and "laundry worker" (DOT No. 361.685-018). [AR at 20, 54.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of July 2, 2012, through June 3, 2014, the date of the decision. [AR at 20.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) relied on the testimony of the vocational expert based on a hypothetical question that did not set forth all of plaintiff's impairments; and (2) did not rely on the vocational expert's response to a hypothetical question posed by plaintiff's counsel. [Joint Stipulation ("JS") at 4.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

/

/

**A.    PLAINTIFF'S RFC AND THE ALJ'S RELIANCE ON THE VE'S TESTIMONY**

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

Plaintiff contends that the ALJ improperly relied on the VE's testimony. [JS at 5-24, 38-41.] Specifically, plaintiff argues that the ALJ erroneously relied on the VE's response to a hypothetical question that "d[id] not set forth [p]laintiff's impairments that are established in the record." [JS at 7.] In so arguing, plaintiff contends that the ALJ improperly assessed her RFC by improperly evaluating the medical opinion evidence, and improperly evaluating her credibility. [JS at 5-24, 38-41.]

At step five, the Commissioner bears the burden of proof to "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); see also Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). The ALJ can meet this burden at step five by either taking the testimony of a VE or by referring to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2 (also known as the "grids").[4] See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). If the ALJ chooses to rely upon the testimony of a VE, the hypothetical posed to the VE must be "accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101. If the hypothetical presented to the VE reflects all of the claimant's limitations and is supported by substantial evidence, the ALJ may rely on the VE's response. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). A VE's recognized expertise provides the necessary foundation for his or her testimony, and no additional foundation is required. Id. at 1218.

At the hearing, the ALJ asked the VE to assume a hypothetical individual who "has no exertional limitations, but is limited to simple, repetitive tasks in a non-public setting; that is, would have only incidental interaction with the public." [AR at 54.] In response, the VE indicated that this hypothetical individual could perform jobs such as janitor and laundry worker. [Id.] The

---

[4] "The grids categorize jobs by their physical-exertional requirements and . . . . direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." Tackett, 180 F.3d at 1101 (citations and footnote omitted).

6

hypothetical to the VE was consistent with the RFC as found by the ALJ. [AR at 15.] However, plaintiff argues that the RFC did not contain all of her limitations.

An ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).

In determining plaintiff's RFC, the ALJ discussed the medical evidence [AR at 16-19] and found the opinions of State Agency medical consultants Nadine Genece, Psy.D.,[5] and Dan Funkenstein, M.D. -- who both found that plaintiff could perform simple work tasks in a nonpublic setting [AR at 65, 79-80] -- "fully credible." [AR at 19.] The ALJ discounted the opinion of treating source Donald Slutzky, M.D., and rejected the opinion of consultative examiner Isadore Wendel, Ph.D. [Id.]

### 1. Dr. Genece and Dr. Funkenstein

Plaintiff argues that the hypothetical question to the VE (and the resulting RFC) should have included the following limitations: (1) Dr. Funkenstein's findings of a moderate limitation in the ability to maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday/week without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable

---

[5] The ALJ erroneously referred to Dr. Genece as a consultative *examiner.* [AR at 17.]

7

number of and length of rest periods; and (2) Dr. Genece's similar findings. [JS at 7-8, 39-40.]

Here, despite finding the opinions of Drs. Genece and Funkenstein "fully credible," the ALJ failed to explain why she did not include certain of their significant and probative findings in the hypothetical and/or RFC determination. [AR at 15, 54.] For example, a limitation to simple, repetitive work (as included in the RFC) does not adequately encompass difficulties with concentration, persistence, or pace (as found by Drs. Genece and Funkenstein but not included in the RFC). Brink v. Comm'r Soc. Sec. Admin., 343 Fed. App'x 211, 212 (9th Cir. 2009), reaffirmed by Brink v. Comm'r of Soc. Sec. Admin., 599 Fed. App'x 657, 657-58 (9th Cir. 2015). In Brink, the ALJ's hypothetical to the VE included only a limitation to simple, repetitive work, and did not include the claimant's moderate limitations in concentration, persistence, or pace as assessed by the ALJ. Id. The Ninth Circuit found that the hypothetical question to the VE "should have included not only the limitation to 'simple, repetitive work,' but also Brink's moderate limitations in concentration, persistence, or pace." Id.; see also Bentancourt v. Astrue, 2010 WL 4916604, at *3-4 (C.D. Cal. Nov. 27, 2010) (where the ALJ accepted medical evidence of plaintiff's limitations in maintaining concentration, persistence, or pace, a hypothetical question to the VE including plaintiff's restriction to "simple, repetitive work" but excluding plaintiff's difficulties with concentration, persistence, or pace resulted in a VE's conclusion that was "based on an incomplete hypothetical question and unsupported by substantial evidence."). As the ALJ failed to provide legally sufficient reasons for not including the mental limitations assessed by Drs. Genece and Funkenstein in the hypothetical and RFC determination, remand is warranted.

### 2. Dr. Slutzky and Dr. Wendel

Plaintiff argues that the hypothetical question to the VE (and the resulting RFC) should have included the findings of treating physician Dr. Slutzky, and consultative examiner Dr. Wendel. [JS at 9-11, 15-18, 18-20.]

Dr. Slutzky opined that plaintiff was disabled from February 13, 2013, and was to remain off-work until July 1, 2014 [AR at 548, 554]; had poor or no ability to deal with work stress, function independently, or maintain attention and concentration [AR at 549]; had marked impairments in

concentration, persistence, or pace [AR at 550]; and was mildly to markedly impaired in activities of daily living, and social functioning[6] [AR at 550]; had a Global Assessment of Functioning ("GAF") score of 48[7] [id.]; and would be absent from work thirty days per month due to her mental condition. [Id.] The ALJ found that Dr. Slutzky's opinion was not entitled to "significant weight" because "[t]he medical notes of . . . Dr. Slutzky are largely litigation oriented strategies for the worker's compensation case and do not reflect objective signs or findings,"[8] the record "lack[s] . . . supportive medical documentation to corroborate this opinion,[9] and the . . . treatment records do not document signs, symptoms or objective observations supportive of the extreme limitations

---

[6] As noted by the ALJ and defendant, the form used by Dr. Slutzky provided no option for "moderate" symptoms [AR at 18; JS at 33], and only included options for rating the degree of plaintiff's impairment of: "None -- no impairment"; "Mild -- impairment does not seriously affect ability to function"; "Marked -- impairment seriously interferes with the ability to function independently, appropriately, and effectively"; and "Extreme -- more severe than 'marked'." [AR at 550.] In contrast, the Agency regulations provide that when rating the degree of functional limitation in the functional areas of activities of daily living, social functioning, and concentration, persistence, or pace, a five-point scale is used: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4).

[7] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV"). A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). Id. The most recent edition of the DSM "dropped" the GAF scale, citing its "conceptual lack of clarity" and "questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

[8] The ALJ points to no evidence of any actual impropriety on the part of Dr. Slutzky. [AR at 19.] See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996)). Thus, this finding is not supported by substantial evidence.

[9] The Court notes that the record contains medical documentation that *may* support Dr. Slutzky's opinion. For instance, on September 5, 2012, Gloria Hadsall, M.D., assessed plaintiff with severe situational anxiety and noted "significant functional impairment." [AR at 315.] Dr. Wendel's opinion, discussed herein, also may provide support for Dr. Slutzky's opinion. However, the ALJ does not identify how Dr. Hadsell's assessment and/or Dr. Wendel's opinion fail to support Dr. Slutzky's opinion.

assessed."[10] [AR at 19.]

Plaintiff also argues that the ALJ failed to provide legally valid reasons to reject the opinion of the consultative examiner, Dr. Wendel. [JS at 18-20.] On February 7, 2013, Dr. Wendel found that plaintiff was suffering from "Cognitive Disorder" and possible dementia. [AR at 468.] Dr. Wendel opined that plaintiff cannot perform detailed and complex tasks, or maintain regular attendance in the workplace; "is probably not able to perform work activities on a consistent basis" or complete a normal workday or work week; is able to interact with coworkers and the public on a limited basis; cannot deal with the usual stresses encountered in competitive work; has a moderate restriction of daily activities, and moderate difficulty in maintaining social functioning; and cannot understand, carry out, and remember simple instructions, respond appropriately to coworkers, supervisors, or the public, or manage her own funds. [AR at 469.] Dr. Wendel also found that plaintiff's anxiety and fear in a work setting would "interfere with her concentration, persistence, and pace," and that plaintiff had a minimal ability to manage her own affairs. [Id.] The ALJ rejected Dr. Wendel's opinion, finding it "contrary" to "the notes of treating sources," overly restrictive and internally inconsistent, and contrary to plaintiff's "presentation at the examination, at the hearing, [and] her level of education." [AR at 19.]

As remand is warranted to reconsider the RFC and medical opinion evidence, the Court will not determine herein whether the ALJ provided legally sufficient reasons for discounting the findings and opinions of Dr. Slutzky and Dr. Wendel.

/

/

**B.    CONCLUSION**

Based on the foregoing, the ALJ erroneously relied on the VE's response to a hypothetical

---

[10] Dr. Slutzky's treatment notes contain GAF scores ranging from 35-65; findings of major depression, generalized anxiety disorder, post-traumatic stress disorder, and chemical dependency; Dr. Slutzky's impressions, such as "[h]allucinations persist with insight"; and treatment with psychotherapy and medicine management. [AR at 528-42, 552-53.] The ALJ does not further explain how these findings fail to support Dr. Slutzky's opinion.

that was not supported by substantial evidence. Because the ALJ's reconsideration of the RFC and medical opinion evidence may also impact the ALJ's evaluation of plaintiff's credibility, the ALJ on remand shall also reconsider plaintiff's subjective symptom complaints. Additionally, because the ALJ's reconsideration of the evidence may also impact the hypothetical(s) to the VE, the Court will not consider herein plaintiff's second claim of error.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand shall reassess the medical opinion evidence of record and explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Third, the ALJ shall reconsider all of plaintiff's limitations in making her RFC determination. Finally, with the assistance of a VE, if warranted, the ALJ shall determine, at step five, whether there are jobs existing in significant numbers in the regional and national

economy that plaintiff can still perform.[11]

### VII.

### ORDER

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 17, 2015

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[11] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

12